We will hear argument next in number 232230 Stratton against HHS. Good morning, your honors. May it please the court. This is actually the fourth time since 2017 that I've stood before this court to argue about the meaning and application of the reasonable basis provision in the Vaccine Act. The court may have figured out that I have taken a personal interest in this issue, and I want to start out by thanking the court for its engagement. On this issue, Congress certainly did us no favors by enacting what seems like a unique fee-shifting scheme and then failing to define key terms in a reasonable basis. Unfortunately, the legislative history is similarly unhelpful in determining what reasonable basis means. For its part, the Supreme Court in Bruisewitz v. Wyatt stated that attorney's fees are provided not only for successful cases, but even unsuccessful claims that are not frivolous. We think the not frivolous part of that statement is referring to the reasonable basis provision, but the Supreme Court hasn't otherwise elaborated on that. Through its opinions in Simmons, Cottingham, and James Cornelius, the government believes this court has crafted a workable standard that strikes the appropriate balance between setting parameters for the special masters to apply, while also granting them discretion in weighing the evidence. However, the standard only works if the special masters apply it. And the problem with the chief special master's decision in this case is that we don't know what standard he applied, because he did not provide any explanation for his rationale for concluding that the claim in this case had a reasonable basis. Or as my seventh grade algebra teacher, Ms. Striggers, would have said, he didn't show his work. So if this were a straight arbitrary and capriciousness review standard, one might borrow from the most recent formulation that arbitrary and capricious requires that the agency action be reasonable, that's a substantive thing, and reasonably explained, that's a process thing. Does that directly apply here, or indirectly apply here? I think it could indirectly apply here, I'm not sure. Because we're under an abusive, I mean, do we agree that this decision is reviewed for abusive discretion, rather than arbitrary and capriciousness? Or is arbitrary and capriciousness a form of abusive discretion? I'm trying to fit those things together. We have argued in our brief that the special master's failure to articulate the reasons behind his conclusion that the claim had a reasonable basis was legal error. Because he doesn't specifically articulate the standard that the court has handed down. He just calls it an easier to meet standard than the preponderance standard, and then summarily concludes that the standard was met. I'm having, I think, some trouble seeing how a failure to give a reason is a legal error. What we have argued is because it's impossible to discern from the special master's decision what standard he applied. He did not quote the Cottingham standard, he cited Cottingham, but then he just said it's a lenient standard, it's an easy to meet standard. And that does not comport with the more than a mere scintilla and less than a preponderance standard that this court has articulated in Cottingham and James Cornelius. So we do think that there is legal error in the sense that it's not clear from the decision what standard he actually applied. But we then do go on to also argue that it was arbitrary and capricious based on the evidentiary record for him to conclude that there was a reasonable basis for the decision. I'm not familiar with the cases that you're discussing that talk about arbitrary and capricious requiring both reasonableness and a reasonable estimation. It was just a useful condensed formulation of, I think, the two ideas that have been kicking around in arbitrary and capriciousness law for a very long time. I think the first formulation that I know is FCC against Prometheus Radio, and then it was repeated last year in the Ohio EPA case because it just encapsulates that arbitrary and capriciousness has not only a substantive inquiry but also a process inquiry. The process meaning you actually have to discuss the important stuff. And I take it that the heart of your objection here is that the most important piece of the basis for compensation, namely causation, just isn't discussed at all. That's exactly correct. And if the court were to hold that the cases that you're discussing apply within the context of the Vaccine Act reasonable basis determinations, then we think that the decision is reversible under just a straight arbitrary and capricious standard. Can I ask you what you think needs to be discussed to show a reasonable basis? Because there is some reference to the fact that she got a vaccine and that she had some symptoms consistent with the vaccine in the record. And then I think there's some in the record but not discussed medical journals or something like that that linked the vaccine with an injury.  So I'm wondering is it, and this is I think a tangent of Judge Torrance's question, is the problem here that the special master didn't explain why the evidence in the record met that very low reasonable basis threshold? Or can we just look at the evidence in the record and say, well, that would support his findings even if they were unexplained? And I understand why you're concerned here, because this is not a runoff. There are lots of these cases, and we need to understand the basis for his reasonable basis finding, and so does the Court of Federal Claims, if we're going to review them even under the very deferential standard. Correct. My response to that is that in Cottingham, the court made clear that to establish a reasonable basis, the petitioner is required to submit more than a merits until of objective evidence on each of the elements of the petitioner's claim, which are the elements that are set out in Section 11C1 of the Act. Does that include causation? It does include causation. The court in Cottingham specifically said that the issue in Cottingham was causation and that it was the petitioner's burden to show that there was more than a merits until of evidence of a causal link to establish a reasonable basis. But even if we read the Special Master's decision generously, I don't find any suggestion of causation on this record. He cites the right standards, but he doesn't discuss causation. Am I supposed to be inferring from his reference to medical evidence that that includes the causation evidence? I don't know, and I think that's the problem with his decision, is we just don't have any idea what evidence he had in mind when he made that summary conclusion that there was a reasonable basis. So in Cottingham, there were kind of two pieces put together that I think this Court said, actually thought until I got to the end of the opinion, that it was going to say is enough. Instead, it said this is all objective evidence supportive and then said, but, you know, that's ultimately up to the Special Master. So remand, but the two pieces were various diagnoses of certain conditions and then finding those conditions referred to in the package insert. Do we have, are the conditions here, POTS and the other one, referred to in package insert or not? POTS is not referred to in the package insert, and what petitioner here is arguing is that it's not so much the POTS diagnosis, but the symptoms associated with the POTS diagnosis that are on the package insert, the syncope, the dizziness, the headaches. And you are correct that in Cottingham, the issue was remanded back to the Special Master to consider the product insert in conjunction with the medical literature, which is basically the same medical literature that's been submitted in this case, the affidavit, the medical records. And the Special Master went through in exhausting detail the regulatory scheme behind how the product inserts are put together, and basically concluded that the only section that really is pertinent to a causation analysis is... I'm sorry, you're not describing what happened on remand? On the remand, but in his discussion of the product insert, there's a section for adverse reactions, and that is the only section which in the regulations it says the manufacturers have acknowledged that there's some basis for assuming a causal relationship. And that section, it limits those particular symptoms, the headache, the syncope, or dizziness and fainting, to within 15 days of vaccination. And so the Special Master concluded anything beyond that, there really isn't a basis for concluding that those symptoms would have been caused by the vaccine. The latency in Cottingham was four months, and the Special Master basically concluded that was too long to establish a reasonable basis in that case. The latency here is anywhere from 14 to 20 months. The records show that, first of all, that Ms. Stratton was complaining of these same symptoms in the two years prior to vaccination. Then there's this eight-month period post-vaccination where she seeks routine medical care for completely unassociated problems. So just to kind of follow up on their two questions, would it be necessary for the Chief Special Master to discuss kind of these pre-vaccination symptoms as well, in order to meet the reasonable basis standard in your view? So as a practical matter, we filed an objection to the fee application in which we raised these specific issues. And so going back to your question about what is the Special Master required to address, I think arguably the Special Master is required to address each of the elements of the petitioner's case. But as a practical matter, we flag which issues we think that the record does not support. And so I think at a minimum, the Special Master should be required to address those issues. At least I thought Judge Cunningham was asking about not just to address symptoms that arose or reported after the vaccine, but a set of medical conditions that are in medical records preceding the vaccine, which may have some bearing on whether similar post-vaccine conditions had a causal relationship to the vaccine. Absolutely. And we flagged those. We raised those issues in our objection that we filed to the application. We provided a medical summary of our review of the medical records, noted that there were symptoms predating the vaccination that seemed to be consistent with what petitioner was claiming were caused by the vaccination, which is axiomatic that if they predated the vaccination, they couldn't have been caused by the vaccination. There were also some scholarly articles, right? Would those articles be things that the Chief Special Master should discuss in terms of the reasonable basis for causation? I think so. I mean, that is evidence that the petitioner specifically submitted in support of proving a reasonable basis for the claim. I mean, these are the same articles that Mr. Downing has submitted in the hundreds of cases that are being withdrawn from the program to go to the Merck MDL. And he submits them to try to establish a reasonable basis. What about these things? I know your time is going to run out. There's at least some statements, I want to say, that were made in terms of what would happen in terms of growing fees after a certain time period and before a certain time period. I don't know if you want to address that in kind of your roaming time before you sit down. Sure. I would like to address that, that we do have a concern about that, obviously, because it seems, again, a very arbitrary approach for the Special Master to be saying that he's going to award fees in cases filed before a certain date, but not filed after a certain date, without actually having looked at the evidence in those cases. Our position is that each case should be evaluated for a reasonable basis on the basis of its own evidentiary record. And drawing a line at whether they were filed before or after he issued the decision and the Adjean case, to me, goes more towards whether petitioners were unnoticed that they didn't have a good evidentiary basis for the claims. And that, to me, is more of a good faith issue, whether the case can be filed in good faith before or after a certain date. It doesn't go to the issue of reasonable basis, which this Court has held is an objective evidentiary standard. Just one quick question. Are fees available for work in getting fees? Because of the fees, I think, it's sometimes referred to. The Court has typically allowed that. In general, I think. In general. I mean, outside the Vaccine Act context. Yes, yeah, yeah. Making this an elaborate inquiry might not be a great idea for the government paying fees. I think it's more of a principle issue for us that the case and it goes to discouraging petitioners from filing claims that don't have a reasonable basis. That's why we're looking for consistency among the special masters in how they resolve these issues so that petitioners can decide whether it's even worth filing a claim in the first place and we can know whether it makes sense to make an objection. I just want to follow up on that. How much do you think they actually would have to do? Because it seems to me, what we were talking about at the beginning, if the special master had said this person got the vaccine, she had symptoms consistent with injuries caused by the vaccine as supported by the scholarly journals in two or three sentences, you probably wouldn't be here, right? Right. I mean, if they were not turning this into a heightened merit standard, you just want some indication of the evidence for the three factors. Exactly. And we don't make these objections in very many cases. We really only do it when it's clear that there is a failure of evidence on one of the elements of a petitioner's claim. But, I mean, you do plan to look at those pieces of scholarly literature and say, look, they're unreliable. They actually don't quite match these conditions in the temporal characteristic or something else. You want to pick them apart, I don't mean that in a pejorative sense, in a way that a merits decision on compensation would, in fact, do. Fortunately, most of this literature has already been addressed and reasoned decisions from the special master's dismissing HPV POTS claims. And so the special masters can just draw on the decisions that are already out there to basically say that these articles are not reliable evidence that the HPV vaccine causes POTS and other autonomic disorders. Mr. Downing. It's almost afternoon. I can still say good morning, Your Honors. So a couple of things right out of the gate. To address the question that was asked about the information from the chief special master that he intends to rule a certain way in the future, I do agree with Mr. Johnson on that point. I think if he and I are litigating this question and the chief special master were to say, I'm only going to award this much and arbitrarily cut it off or whatever, and it's not reasonably based on evidence or so forth, one of us is going to appeal that. If it works to my disfavor, I'm going to be the appellant on that case, and if it's the reverse, it's probably going to be Mr. Johnson. But I think we really can't do anything with that until that happens. The problem with that is it's because it doesn't give us the special master's views on why there is a reasonable basis in a particular case, which we need to review for arbitrary and capriciousness. I think that's absolutely correct, Your Honor, and so focusing on this. So my question in this case, because I think this is a very close case, is why is it sufficient when I can't discern from the special master's decision, even though I could probably go and dig in the record and find stuff, at least causation? Because he doesn't use the word, here's a reasonable basis for causation, as far as I can tell, or any kind of thing to that effect. So I think it's important in looking at the chief special master's decision to start with, at appendix page 5, the chief articulated back to the government what their objections were, that the medical records don't sufficiently support the alleged symptoms, that the treating doctors didn't opine that Petitioner's HPV vaccine caused or contributed to the problems, and that Petitioner's affidavit shouldn't be afforded any weight. He then goes through saying that the skepticism about the claim's likelihood of success is reasonable, perhaps, but that's not the standard. He articulates what reasonable basis is. It is looking at the feasibility of the case, and as he then proceeds to say, he looked at the medical records, he uses his experience in dealing with other HPV cases, which special masters have the discretion to do, and then again, as your honors noted, he indicates that this particular claimant experienced post-vaccination symptoms. But can you help me, is there anything more than this concluding sentence of paragraph 3 on page 5 that suggests his analysis of reasonable basis? That's all I could find when he says Petitioner's filed sufficient medical records to satisfy the exceedingly low evidentiary standard. Well, and your honor, for the special masters to exercise their discretion, that is sufficient. So that's the question for us. That's right, that's my position. Why is that sufficient? How is this a sufficient explanation of how your client has met at least some minimum burden on all the elements of the claims that we can review? So, your honor, at because arbitrary and capricious is really deferential, but it's not, you know, it's not they hide behind a curtain and we can't do anything about it. I don't know what basis in what part of the medical record, I mean, maybe it required three sentences instead of one. What's wrong with that? Well, I think, I don't think that the special masters have to go through and line item what they're doing, but to each their own. But there's a spectrum there. How can I review what the special master did here based upon solely that sentence? I think, your honor, if you look, if we then go to the decision from the Court of Federal Claims. I'm not going to go there. That's the problem, is the Court of Federal Claims made a really good decision and dug into the record a little bit more and found stuff, but I'm reviewing the special master's decision. Well, the decision on review here is Judge Lerner's affirmation of a chief special master in which she specifically says, and I think this is the point to your question, medical records are sufficient to establish reasonable basis. Now, she gives a couple of examples. I know, but he didn't. And this is the problem going forward is this special master needs to do a better job of writing his opinions. And it may not, I don't think it's very much, but if we didn't have the Court of Federal Claims decision, I would have no idea what he found reasonable about your case. And I understand that, your honor, but for Ms. Stratton, this is the decision that's on review. And there's very specific references to the medical chart. It would be nice if the chief special master had done that. I believe he exercised his discretion appropriately by looking at the medical chart, using his experience, because one of the reasons they have discretion here is because they're the ones seeing these cases on a day-to-day basis. The chief sees a lot of the Gardasil cases. He's familiar with the evidence and the causation theories, the medical literature, and so forth. And he specifically said he reviewed the medical chart and found the submission to be sufficient to warrant an award of attorney's fees. Would it have been nice if it had been more detailed? Perhaps. Did the Court of Federal Claims, as your honor said, dig in a little deeper and give specific citations to medical records that support the award of fees, that go further and support the chief special master's decision that the medical chart was sufficient to award fees? She absolutely did. This case has reasonable basis. I can talk more about the standard. I don't know that you need to hear it. This case is a case we need to decide the standard in because we have no idea what evidence he was relying on to determine whether it met the standard or not. That's another part of the problem here. Well, I think I understand what you're saying, your honor, but at the end of the day, when we look at what Judge Lerner did in affirming the chief, in this case-specific analysis, you have unearthed witness statements. You have the medical chart that supports the vaccination case. Well, I understand case-specific analysis, but the real problem here seems to be, because he also referenced that Adergen decision, is he's decided he's not going to approach these on a case-by-case basis. And he's just decided you're going to get the fees up to this date and you're not going to get them up to that date. And that's just arbitrary and capricious. Do you agree with that? I do. I would agree with that, your honor. I would. And so if that's his mindset, and he hasn't given us anything further to back it up in this specific case beyond a scant statement about medical evidence without identifying any of it, why isn't it better to send it back to him and explain it? You're probably going to get the same conclusion that she had the vaccine, she had symptoms consistent, that at least at one point in time, you know, there was medical or journal evidence that was a reasonable basis, even if it might not be. But I just find this very problematic, that we're asked to determine whether something's arbitrary or capricious based on one almost contentless sentence. Well, I don't believe that we are trying to decide in Ms. Stratton's case whether what happened at the lower court is arbitrary or capricious. The arbitrary and capricious part comes in later in some future case should the chief special master do what he has threatened to do in the Atchison and in the Stratton case, but that hasn't happened yet. And I think that he's heard already from me in subsequent briefing that it would be arbitrary and capricious to do that, and you're supposed to look at these on a case-by-case basis and exercise discretion. I'm going to return to something that I think I asked Mr. Johnson about. So medical records of the plaintiff all by themselves can't be enough for anything. What the medical records report has to be connected to some reasonable understanding of those conditions being connected to this vaccination, right? So it's a two-part thing, which is I think what Cottingham said has to be. Otherwise, you know, I have medical records saying that, you know, my leg is broken. I couldn't possibly have anything to do with Gardasil. I'm just assuming that. So there has to be something about the specific content, at which point Mr. Johnson says, you know, published studies, and he's going to say, I'm going to pick those apart. And indeed, for it to be a reasonable basis to connect them, I have to be able to look at those studies and say, you know, very, very bad study or very, very narrow study doesn't cover this condition when it came 14 to 18 months or 22 months after the vaccination, right? Well, I would say partly right, Your Honor, with all due respect. So I think we have to be very careful here saying that there has to be a causal link expressed in the medical chart, because I can promise you if I had a dollar for every case where a doctor said it was vaccine-related in the medical chart, I'd have about a dollar. I didn't take that to actually. Okay, good. Why would that not be sufficient? That is, a doctor says, I think that, you know, a treating doctor says, I think this is connected. Do you think that that ought to be sufficient? Or I think Mr. Johnson's view is that's not sufficient because that's, you know, that may just be completely unreasonable, the fact that one doctor says it doesn't mean it's reasonable. Well, Your Honor, to answer that, I think I would say if we have a doctor in the treating medical chart that hypothesizes a causal connection between vaccination and the injury, it gets much easier for a petitioner in the program to demonstrate reasonable basis. But typically what you have, and what I think is present in most of these cases, is you have an injury. And just as you say, your broken leg, it's probably not related to Gardasil. But if you have POTS, on the other hand, where the literature is continuing to develop, even there's literature that has come up even since the Chief Special Master issued this decision, that is continuing to connect Gardasil and POTS. So if a petitioner has POTS and symptoms start post-vaccination, you're starting to satisfy the elements of a claim. You got a vaccination in the United States. You pled an injury. The injury started after the shot. It's supported by medical literature. The medical chart corroborates the allegations in the petition. Because what about the timeframe, though? I know the opposing counsel talked about it being 20 months or so when some of these particular symptoms were showing up. How is that timeframe relevant in this case? Well, the timeframe is, I think, always relevant. Because if it's too far removed, then it isn't reasonable. But that's not when symptoms started. That's when she gets a full-blown POTS diagnosis and starts having significant problems. And that is 100% consistent with this disease. The Keneshita article that we submitted, and I don't have the exact appendix number in front of me, defines the onset mean for this disease to be about five months post-trigger. But most of these individuals don't get a formal POTS diagnosis for five to seven years. What about the pre-vaccination symptoms that were also in the medical records? What's your response to those and the overlap? Well, I mean, my response would be they're unrelated to the ultimate disease that she developed. And that would be a fact question, that ultimately if this case had stayed in the vaccine program, we would have gotten experts. We would have had an autonomic neurologist that opined that those predated vaccination symptoms are irrelevant. Or if they are relevant, perhaps the vaccination significantly aggravated an underlying process. But we didn't get that far because this particular petitioner exercised her right to opt out at 240 days. So I think those are all valid questions, but they don't go to whether this case had reasonable basis at the inception. As we've talked about, it's a very low threshold. What I think you're describing, Your Honor, is more of a causation analysis to win on entitlement, where a petitioner has a full-blown burden of proof. You guys satisfy more elements than what we do for reasonable basis. Because honestly, I think it really is more so this process issue that I would say both of my colleagues have been explaining. The lack of explanation, I'm going to say, that was actually put forth in terms of the reasonable basis analysis. Well, and again, Your Honor, all I can do to address that concern is to say, yes, the chief did not give a lot of detail in his decision, but I do not believe that level of detail is required. He cited why he did what he did. He's relying clearly on the medical chart that was submitted. But then, as is the process in the vaccine program, counsel appealed that and made these exact same arguments to Judge Lerner. And Judge Lerner did exactly what she is supposed to do. She looked at what the chief did. Was there a basis for it? And gave, as Your Honor said, a more detailed explanation. Like I said, it would be nice if the chief had done it, but he didn't. But Judge Lerner did. So for Ms. Stratton, I have all the elements necessary to have reasonable basis. This reasonable basis standard has plagued petitioners and respondent and this court for years because it's just not congressionally defined. But what we do have is we have factors that dictate which way the special masters go. Is there a reasonable basis or is there not? And it's almost 100% discretionary. I say almost because there's always review for abuse of that or what have you. But here, there is enough articulated in the chief's decision to support what he did. As I said, at page 5 of the appendix, he articulated why he did what he did. It's not very illuminating, but it's why he did it. I think it's important to note that he relied on his own expertise, the medical chart, and the underlying facts of this specific case and exercised that discretion. I had a lot on the standard and all that. I don't think we need to get into that. So if Your Honors don't have any other questions for me, I think I'll rest. We're all set. Thank you very much. Thank you, Your Honor. Mr. Johnson. Just a couple of very brief points. First of all, Mr. Downing kept mentioning that the chief's special master threatened and that hadn't happened yet. It happened here. That's why we're here as an appellant. We saw that the special master said he was going to do it, and he did it, and so we appealed. On the idea that medical records can establish a reasonable basis, I just wanted to briefly say, the record in this case is that the petitioner had symptoms two years prior to vaccination, and then she's vaccinated in November of 2017. The following eight months has routine medical care for unrelated symptoms, and then in about January of 2019 begins experiencing symptoms that in July of 2019 are diagnosed as POTS. So there is a blatant timing issue in this case. And what is missing is any attribution from any treating physician or an expert that links causally the vaccine to the later diagnosis of POTS 20 months later. And so that's, you know, you asked a question about whether if there were a treating physician in the records who had said that the vaccine may have caused the condition. I think we would have considered that in determining whether to bring a reasonable basis objection. I think that we would view that as some evidence, but it would depend on the context in which the doctor made that diagnosis, the expertise of the doctor making that diagnosis. Those would be factors that we would consider. But I think the statute talks in terms of that the special master can't find entitlement based on the claims of the petitioner alone, unsubstantiated by medical records or medical opinion. And so those are the types of evidence we're looking for on the reasonable basis inquiry, not necessarily sufficient to meet the preponderance standard, but just to get over them more than a mere scintilla. Thank you. Thanks to both counsel. Case is submitted. And that brings our business to a close for today.